**[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 457.]**

THE STATE EX REL. GEMIND, APPELLANT, *v.* INDUSTRIAL COMMISSION OF

OHIO, APPELLEE.

**[Cite as *State ex rel. Gemind v. Indus. Comm*., 1998-Ohio-214.]**

*Workers' compensation—Industrial Commission's order denying application for*
*permanent total disability compensation an abuse of discretion when Noll*
*requirements not met—Cause returned to commission for further*
*consideration and amended order.*

(No. 95-2592—Submitted May 26, 1998—Decided July 29, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD12-1745.

_____

{¶ 1} On April 19, 1989, appellant, Michael T. Gemind, sustained injuries
in the course of and arising from his employment as a concrete finisher with Parsons
Cement Contractor. Appellant's injuries occurred when a floor where he was
working collapsed, causing him to fall two stories to a floor below. A workers'
compensation claim resulting from the fall was recognized for "fractured vertebra
T11-12, multiple contusions and abrasions entire body."

{¶ 2} In 1994, appellant filed an application for permanent and total
disability compensation. In the application, appellant noted, among other things,
that he had not worked since the date of his injuries and that he had been a cement
finisher since the age of thirteen. In support of his application, appellant submitted
a letter from Harry O'Dell, M.D., dated August 20, 1993. Dr. O'Dell concluded
that appellant's injuries have rendered him "permanently and totally disabled." Dr.
O'Dell also stated that "I do not anticipate that he [appellant] will return to gainful
occupation."

{¶ 3} On September 21, 1994, appellant was examined by George A.
Hunter, M.D., on behalf of appellee, Industrial Commission of Ohio. In his report,

Dr. Hunter found that appellant was incapable of returning to his former job duties. However, Dr. Hunter concluded that appellant "would be able to work at a more sedentary type of occupation not requiring long periods of standing, walking, or bending. This would be a position requiring sitting with intermittent periods of short standing." Dr. Hunter assessed the medical impairment for appellant's injuries at thirty-four percent.

{¶ 4} Appellant was also examined by Zouhair C. Yassine, M.D. In his report, dated August 19, 1993, Dr. Yassine concluded that appellant's medical condition was permanent, that he had reached maximum medical improvement with respect to his injuries, and that appellant would not benefit from additional rehabilitation efforts. Dr. Yassine also opined that appellant could not return to his former job, but could engage in sustained remunerative employment of a sedentary nature.

{¶ 5} On November 10, 1994, the commission conducted a hearing on appellant's application for permanent total disability compensation. Thereafter, the commission denied the application, stating, in part:

"The reports of Drs. O'Dell and Hunter were reviewed and evaluated. This order is based particularly upon the report(s) [*sic*] of Dr. Hunter.

"Dr. Hunter examined the claimant and found that the claimant demonstrated decreased range of motion in the dorsal and lumbar spine. The lumbar muscles were noted to be tight and with forward bending, there was more spasm in the muscles on the right side than on the left side. Straight leg raising was negative bilaterally and the claimant had normal range of motion of the hip. Dr. Hunter opined that the claimant would be unable to return to his former position of employment as a cement finisher. The claimant would be able to engage in more sedentary occupations not requiring long periods of standing, walking or bending. Suitable occupations would require sitting with intermittent or short standing.

"The claimant submitted the report of Dr. O'Dell, dated 8-20-93. This report was not signed, therefore, it does not constitute evidence upon which the Staff Hearing Officers can rely upon in making this decision.

"Claimant is 48 years old and he completed the 9th grade. He does not have a G.E.D. He cannot read, write or do basic math well. The Statement of Facts indicates that the claimant cannot read or write at all, however, his Permanent and Total Application says he can.

"Based upon the report of Dr. Hunter, the Hearing Officers find that the claimant is capable of sedentary-to-light work activities. His primary limitations are with standing and bending. Because the medical proof indicates that the claimant is capable of some work activity, consideration of his non-medical vocational factors is required.

"The hearing officers find that the claimant's past employment has consisted of heavy work as a cement finisher only. This work did not yield any skills which could be transferable to sedentary work activities. In light of the claimant's relatively young age of 48, some consideration, the claimant's ability to be retrained is appropriate. There is no vocational report in file or any other evidence addressing the claimant's ability to be retrained. There being no evidence to the contrary, the Staff Hearing Officers conclude that the claimant is capable of obtaining his G.E.D. and undertaking retraining so as to qualify for a more sedentary-type of work. There are machine operator positions in existence which allow the operator to stand for short periods but sit most of the time."

{¶ 6} On December 14, 1994, appellant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying his application for permanent total disability compensation. The matter was initially heard by a referee (now magistrate), who concluded that the commission's order did not satisfy the requirements of *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. The court

of appeals, in a split decision, disagreed with the referee's recommendation and denied the writ, finding that the commission set forth sufficient medical and nonmedical disability factors in its order to support a denial of the application and that the commission adequately explained the basis for its decision.

{¶ 7} This cause is now before this court upon an appeal as of right.

_____

*Shapiro, Kendis & Associates Co., L.P.A.*, and *Rachel B. Jaffy*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Sandra L. Nimrick*, Assistant Attorney General, for appellee.

_____

**DOUGLAS, J.**

{¶ 8} The central question presented for our consideration is whether the court of appeals erred in determining that the commission's order satisfied the requirements of *Noll*, *supra*. For the reasons that follow, we find that the commission's order failed to comply with *Noll*. Accordingly, we reverse the judgment of the court of appeals.

{¶ 9} Permanent total disability is the inability to engage in sustained remunerative employment. *State ex rel. Lawrence v. Am. Lubricants Co*. (1988), 40 Ohio St.3d 321, 322, 533 N.E.2d 344, 345, citing *State ex rel. Jennings v. Indus. Comm*. (1982), 1 Ohio St.3d 101, 1 OBR 135, 438 N.E.2d 420. Thus, in determining whether a claimant is permanently and totally disabled, the commission must consider all pertinent factors, both medical and nonmedical, that may impact on the claimant's ability to continue to work. In *State ex rel. Stephenson v. Indus. Comm*. (1987), 31 Ohio St.3d 167, 173, 31 OBR 369, 374, 509 N.E.2d 946, 951, we held that the commission must "look at the claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record in making its determination

of permanent total disability." The commission's consideration of the *Stephenson* factors is essential to the determination of permanent total disability, where the medical evidence indicates that the claimant is capable of some work and the nonmedical disability factors indicate that the claimant cannot realistically engage in sustained remunerative employment. See, also, *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 320, 626 N.E.2d 666, 671 ("A thorough consideration of the *Stephenson* factors is indispensable to the determination of permanent total disability, where a claimant's medical capacity to do work is not dispositive and the claimant's nonmedical disability factors indicate that the claimant cannot realistically return to the job market.").

{¶ 10} In *Noll*, syllabus, we held: "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." The mandate of *Noll* that the commission must explain the basis for its decisions includes the duty of the commission to explain, in its orders, how the *Stephenson* factors, if pertinent, support the commission's determination granting or denying requested benefits. *Gay*, 68 Ohio St.3d at 321, 626 N.E.2d at 671. The failure to comply with *Noll* "is equivalent to an abuse of discretion." *State ex rel. Ranomer v. Indus. Comm.* (1994), 71 Ohio St.3d 134, 137, 642 N.E.2d 373, 376.

{¶ 11} In the case at bar, the commission's order does not adequately explain how appellant's nonmedical disability factors comport with the decision denying permanent total disability compensation. To be sure, the commission's findings are inconsistent with its ultimate determination that appellant's application be denied.

{¶ 12} In its order, the commission states that "the claimant's past employment has consisted of heavy work as a cement finisher only" and that "[t]his work did not yield any skills which could be transferable to sedentary work

activities." The commission also states that "[c]laimant is 48 years old and he completed the 9th grade. He does not have a G.E.D. He cannot read, write or do basic math well." The commission also noted that appellant's file does not contain a vocational report. Based on the foregoing information, the commission then concluded that "claimant is capable of obtaining his G.E.D. and undertaking retraining so as to qualify for a more sedentary-type of work."

{¶ 13} Notably, the commission cites appellant's age and the fact that the record does not contain a vocational report as evidence that appellant is capable of obtaining his G.E.D. According to the commission's order, once appellant has obtained his G.E.D., he would then be in a position to retrain for sedentary-type employment.

{¶ 14} Appellant's age may be a vocationally favorable factor. See, generally, *State ex rel. Wilson v. Indus. Comm.* (1997), 80 Ohio St.3d 250, 253, 685 N.E.2d 774, 777. However, age alone should not be the ultimate determinant as to whether a person has the needed proficiency to obtain a G.E.D. Appellant does not have a G.E.D. He only completed the ninth grade and he cannot read, write, or do basic math well. In this regard, the commission has provided no explanation how appellant, given his present limited abilities, is qualified to obtain a G.E.D. Further, there is no vocational report within the record upon which a proper determination can be made that appellant has the skills necessary to provide him with the opportunity to return to the job market. *Id*., citing *State ex rel. Speelman v. Indus. Comm.* (1992), 73 Ohio App.3d 757, 762, 598 N.E.2d 192, 195 ("[T]he relevant vocational inquiry is 'whether the claimant may return to the job market by using past employment skills or those skills which may be reasonably developed.' "). Indeed, the specific findings by the commission with respect to appellant's limited abilities are inconsistent with its ultimate conclusion that appellant can in fact obtain a G.E.D. and eventually return to sustained remunerative employment. Clearly, the commission's order does not satisfy the requirements of *Noll*.

**{¶ 15}** Having concluded that the commission's order violates *Noll*, we next consider whether appellant is entitled to the issuance of a writ directing the commission to find that he is permanently and totally disabled. In many cases involving *Noll* noncompliance, we have elected to return the cause to the commission for further consideration and amended order. However, *Gay* offers a different alternative in circumstances where returning the cause to the commission would serve no useful purpose. In *Gay*, at the syllabus, we held:

"In a workers' compensation case involving permanent total disability, where the facts of the case indicate that there is a substantial likelihood that a claimant is permanently and totally disabled, courts are not and will not be precluded from ordering the Industrial Commission, in a mandamus action, to award permanent total disability benefits notwithstanding the so-called 'some evidence' rule."

**{¶ 16}** Thus, having the option of deciding between *Noll* and *Gay* relief, we reluctantly choose the former. We are particularly interested in any insight the commission may provide if it determines that appellant is not entitled to permanent total disability compensation. Of course, to adequately justify its decision denying appellant's application, the commission, in its order, would be required to explain how it is that a forty-eight-year-old claimant, who has worked his entire working life as a cement finisher, who has not worked since 1989, who is incapable of returning to his former job duties, who has no transferable job skills, and who has limited reading, writing, and math abilities, can realistically return to the job market to perform some type of sedentary work.

**{¶ 17}** For the foregoing reasons, the judgment of the court of appeals is reversed, and a limited writ is issued that returns the cause to the commission for further consideration and amended order.

*Judgment reversed*
*and limited writ allowed.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting**.

{¶ 18} The appropriate standard for this court's review is to determine whether there is "some evidence" in the record to support the stated basis for the commission's order. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. I believe the commission's order adequately explained how nonmedical factors, in combination with Gemind's medical impairments, permit sustained remunerative employment. The order discussed nonmedical factors such as his age and his ability to read and write as evidence of his ability to be retrained. Gemind produced no vocational report or other evidence that he is incapable of being retrained.

{¶ 19} Because the record below contains "some evidence" in support of the commission's order, I would affirm the judgment of the court of appeals.

MOYER, C.J., and COOK, J., concur in the foregoing dissenting opinion.

_____