[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 342.]

THE STATE EX REL. MALINOWSKI, APPELLEE, *V*. HORDIS BROTHERS, INC.;
INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as *State ex rel. Malinowski v. Hordis Bros., Inc.*, 1997-Ohio-383.]

*Workers' compensation—Denial of application for permanent total disability compensation by Industrial Commission an abuse of discretion when not supported by "some evidence"—Report of commission specialist is disqualified from evidentiary consideration when it is susceptible of different interpretations.*

(No. 95-451—Submitted May 20, 1997—Decided August 6, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD02-244.

———————————

{¶ 1} Appellee-claimant, Ronnie L. Malinowski, injured his low back on June 20, 1989 in the course of and arising from his employment with Hordis Brothers, Inc. Other than a brief period shortly after the injury, claimant has been unable to work since. Two surgeries were unsuccessful in alleviating claimant's symptoms.

{¶ 2} In June 1992, claimant filed a request with appellant, Industrial Commission of Ohio, for further treatment by Dr. W. David Leak. For reasons unknown, the commission did not consider that request for over a year. In the meantime, claimant moved for permanent total disability compensation. He accompanied his request with Dr. Leak's April 29, 1993 letter:

"In reference to your inquiry concerning Mr. Malinowski;

"He is permanently and totally disabled. He has a well-documented industrial injury. He has had appropriate surgical interventions for same and has not been allowed to have reasonable medical/surgical interventions to suppress symptoms. The gentleman has well-documented evidence, via EMG, of

progression of the aforementioned injury and symptoms. Despite these objective findings that correlate well with his clinical complaint, the gentleman has still been made to continue to suffer unnecessarily when medical technology and know how are available to possibly abate this suffering. Thus, due to the progression of symptoms associated with the original industrial injury, the gentleman is unlikely to recover and is in fact totally and permanently disabled."

{¶ 3} Claimant was examined by commission specialists Drs. Paul J. Matrka and John Q. Brown. Dr. Matrka concluded:

"After reviewing this patient's history, [and] treatment program, it is my opinion that this patient is not capable of resuming occupational activities that he was performing at the time of injury. I would agree with Dr. Leak that a rehabilitation program should be recommended and also agree that the patient does have permanency to the problem. Should the patient successfully go through the rehab program, along with the further treatment recommended by Dr. Leak, it would be my impression that the patient could be retrained for a more sedentary occupation, however, there certainly is permanency to his impairments. The recommended treatment program, I would suggest [is] continuing with the program proposed by Dr. Leak which is being directed toward pain control, relief of his symptoms and resolution of his chronic lumbar radiculitis."

{¶ 4} Dr. Brown wrote:

"* * * This man has had two surgical procedures on his back without help. It is my opinion he is not able to return to his former position of employment. This is permanent. He has reached maximum medical recovery. I would consider his impairment to be of moderate degree, 45%. There would be some forms of employment he might be able to engage in using his hands and arms. He would be on a limit of lifting [up to] 10 lbs. and should not do prolonged standing or bending."

**{¶ 5}** On September 7, 1993, a commission district hearing officer denied claimant's request for treatment by Dr. Leak. That same day, a commission staff hearing officer denied permanent total disability compensation, writing:

"The Commission concludes that the claimant is not permanently and totally disabled based on the reports of Paul J. Matrka, M.D., and Dr. John Q. Brown. On March 2, 1992, Paul J. Matrka, M.D., Orthopedic Consultant for the BWC, stated that the claimant could perform a more sedentary occupation and that he should go into a rehab program to permit him to obtain additional training for this. Further, on January 21, 1993, J.Q. Brown, M.D., Commission Orthopedist, stated that there would be several forms of employment that the claimant could engage in using his hands and arms and he could lift up to 10 pounds and that he has no restrictions on sitting.

"It is further noted that the claimant is presently 43 years of age, (10-20-49). Claimant further has a 9th grade education but did go on to obtain a G.E.D. Claimant states he can read, write and do basic math which would be indicative that the claimant has ability to secure additional training for levels of employment consistent with his abilities as outlined by Drs. Brown and Matrka. It is further found that the claimant had prior experience in the U.S. Army in a sedentary and light job as a motor pool clerk which would give him the skills to seek and maintain some reduced level of employment. Considering the vocational factors including the claimant's age, his academic ability and prior work experiences in sedentary and light work, and his residual functional physical capacities, it is concluded that the claimant is not permanently and totally disabled.

"The reports of Drs. Matrka, Brown and Leak were reviewed and evaluated. This order is based particularly upon the reports of Drs. Matrka and Brown."

**{¶ 6}** Claimant appealed the order denying further treatment and sought reconsideration of the denial of permanent total disability compensation.

Reconsideration was denied, but claimant prevailed in his appeal of the other order and treatment was authorized.

{¶ 7} Claimant then filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying permanent total disability compensation. The court of appeals vacated the commission's order and returned the cause to the commission for further consideration and amended order.

{¶ 8} This cause is now before this court upon an appeal as of right.

_____

*Daniel D. Connor Co., L.P.A., Daniel D. Connor* and *Kenneth S. Hafenstein,* for appellee.

*Betty D. Montgomery,* Attorney General, and *William J. McDonald,* Assistant Attorney General, for appellant.

_____

***Per Curiam.***

{¶ 9} The commission determined that claimant was physically capable of sedentary work. It based its conclusion on reports from Drs. Matrka and Brown. The court of appeals, however, ruled that those reports were not "some evidence" supporting a sedentary-work capability. We affirm that judgment.

{¶ 10} Dr. Matrka opined that claimant could do sedentary work *if* (1) he successfully completed rehabilitation and (2) he underwent the treatment program recommended by Dr. Leak. Unfortunately, the commission's unexplained delay in responding to claimant's treatment authorization request delayed claimant's participation in either rehabilitation or Dr. Leak's treatment regimen. By now, claimant may have completed both programs, but the record is silent in this regard. Thus, in the absence of evidence that either condition precedent has been met, reliance on Dr. Matrka's report as "some evidence" supporting claimant's ability to perform sedentary tasks is premature.

**{¶ 11}** Dr. Brown's report is also problematic. At issue is the following passage:

"This man has had two surgical procedures on his back without help. It is my opinion he is not able to return to his former position of employment. This is permanent. He has reached maximum medical recovery. I would consider his impairment to be of moderate degree, 45%. There *would* be some forms of employment he *might* be able to engage in using his hands and arms. He *would* be on a limit of lifting 10 lbs. and should not do prolonged standing or bending." (Emphasis added.)

**{¶ 12}** The court of appeals concluded that Dr. Brown's use of the word "might" denoted uncertainty, which disqualified the report as too equivocal, citing *State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm.* (1994), 70 Ohio St.3d 263, 638 N.E.2d 565.[1] It is difficult to tell whether Dr. Brown is expressing uncertainty as to claimant's ability to even use his hands and arms productively or whether he believes that claimant can use his arms and hands, but questions the existence of jobs that can accommodate him. If Dr. Brown is stating the former, it is difficult to read his report as "some evidence" supporting the denial of permanent total disability compensation since claimant's ability to use his hands and arms was a prominent factor in the commission's decision. If, on the other hand, Dr. Brown is making a definitive statement as to claimant's physical abilities accompanied by gratuitous speculation as to job availability, his report could be "some evidence" supporting the commission's order. The availability of different interpretations, in this case, disqualifies the report from evidentiary consideration.

---

1. The present case, technically, does not fit the facts of *Owens-Corning Fiberglas* or the two cases that preceded it—*State ex rel. Jennings v. Indus. Comm.* (1982), 1 Ohio St.3d 101, 1 OBR 135, 438 N.E.2d 420, and *State ex rel. Paragon v. Indus. Comm.* (1983), 5 Ohio St.3d 72, 5 OBR 127, 448 N.E.2d 1372—since, rather than dealing with two distinct yet inconsistent physician statements as in the cited cases, this action involves one statement that can be read two ways.

**{¶ 13}** The court of appeals determined that relief pursuant to *State ex rel. Gay v Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, would not be proper in this situation. We agree and find it more appropriate to return the cause to the commission for further consideration. As noted earlier, claimant may have by now completed rehabilitation and Dr. Leak's treatment program. The success or failure of claimant's participation will have a significant effect on his eligibility for permanent total disability compensation, since Dr. Matrka stated that successful completion of both programs would render claimant employable. It must also be remembered that claimant was only age forty-three when permanent total disability compensation was denied and that, as claimant states, while drawing temporary total disability compensation earlier, he secured his GED. This suggests that claimant is a motivated individual who, if successfully treated by Dr. Leak, may have reemployment potential.

**{¶ 14}** For these reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————